**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MICHAEL T. WEST,**

                  **Plaintiff,**          **CASE NUMBER: 07-10269**
                                     **HONORABLE VICTORIA A. ROBERTS**

**v.**

**THE SALVATION ARMY,**
**TIM HUNT, JAMES MCSPADDEN, et al,**

                  **Defendants.**

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**I.      INTRODUCTION**

This matter is before the Court on Defendants' Motion to Dismiss, Defendant's
Motion for Stay of Discovery, and Plaintiff's Motion for Partial Summary Judgment.[1] For
the reasons stated below, the Court **GRANTS** Defendants' motion to dismiss and
**DENIES** Plaintiff's motion.  Defendants' discovery motion is **MOOT**.

**II.     BACKGROUND**

On November 10, 2006, Michael T. West ("Plaintiff") applied for a position with
the Salvation Army in Detroit, Michigan.  The Salvation Army preliminarily hired him as a
Production Assistant.  Essentially, Plaintiff was responsible for picking up and

---

[1]Plaintiff's motion was filed 6 weeks after the deadline required for a response to
Defendant's motion under the Court rules.  However, the Court takes into consideration
that Plaintiff is proceeding pro se and considers his motion.

transporting materials , primarily household goods from private residences.

The Salvation Army required all applicants to complete an employment application that asks whether the applicant has been convicted of a felony. Plaintiff disclosed on his application that he had been convicted of one felony. He explained that "fifteen years ago [he] had a problem with police about entering a building without [the] owner's permission." Plaintiff further stated that he served six months in county jail and one year probation for this crime. Plaintiff signed the application certifying that all his answers were true and complete. He authorized the Salvation Army to investigate all statements contained in the application. The employment application stated that "supplying false information herein shall result in immediate disqualification for consideration for employment or termination from employment, regardless of when such false information is discovered."

Plaintiff also signed a "Background Check Notification" form, which stated that he fully understood that his employment depended upon the outcome of the background check and a decision by the Salvation Army ARC Finance Board. On November 21, 2006, the Salvation Army conducted the background check.

The background check revealed that Plaintiff had several convictions: (1) an assault with a dangerous weapon; (2) retail fraud; (3) breaking and entering a building, burglary; and (4) breaking and entering, attempted felony burglary of an occupied dwelling. When it discovered that Plaintiff only disclosed one of his four felonies, the Salvation Army's Finance Board decided that Plaintiff provided false information; it did not approve his employment application. James McSpadden informed Plaintiff that he was terminated. Plaintiff claims that Tim Hunt authorized the termination. In his

Complaint, Plaintiff says that he received a letter (not provided to the Court) stating he was terminated because of his criminal record.

On January 17, 2007, Plaintiff filed a Complaint against the Salvation Army, Tim Hunt, James McSpadden, and unknown individuals (collectively, "Defendants") alleging that he was terminated from employment due to his criminal record. On January 25, 2007, the Court *sua sponte*, dismissed Plaintiff's Complaint for failure to state a cause of action upon which relief could be granted, without prejudice. In the interim, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff then filed a "First Non-Superseeding (sic) Amended Complaint." Defendants filed a motion to dismiss, or in the alternative, motion for summary judgment pursuant to FED. R. CIV. P. 12(b)(6) and 56(c). In response, Plaintiff filed a Motion for Partial Summary Judgment.

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a lawsuit for failure to state a claim upon which relief could be granted. *See* FED. R. CIV. P. 12(b)(6). The Rule requires the Court to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle [Plaintiff to] relief." *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). "[T]o avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

Rule 12(b) also states that if the motion to dismiss under paragraph (6) "contains

matters outside the pleadings, . . . the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(b)(6). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. Am. Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). Once the moving party meets its burden, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. When the nonmoving party fails to make this showing and the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir.2000).

**IV.    ANALYSIS**

4

In his Amended Complaint, Plaintiff alleges that Defendants engaged in employment discrimination in violation of Title VII; 42 U.S.C. § 2000e-5(e). Plaintiff argues that he was discriminated against because of his race; that is, he "is a black man with a criminal record." He asserts that the Salvation Army's practice to conduct background checks disqualifies him and other African-Americans at a substantially higher rate than Caucasian applicants. He also claims that statistics indicate that nationwide as well as in the Detroit area, more African-Americans than Caucasians are arrested.

In response, the Salvation Army argues that Plaintiff was terminated for legitimate business reasons; it contends he was fired not because he has a criminal record but because he lied. Further, Defendants maintain that this Court lacks subject matter jurisdiction because Plaintiff has not meet the requirements to bring a Title VII action.

## A.    Right to Sue Letter

Title VII of the Civil Rights Act of 1964 makes it unlawful for any employer to discriminate against any individual with respect to his "terms, conditions, or privileges of employment." 42 U.S.C. § 2000, et seq. It is well settled that a plaintiff must satisfy two prerequisites before filing a Title VII action in federal court: (1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973). Congress set up this elaborate procedure to "assist in the investigation of claims of racial discrimination in the workplace and to work towards the resolution of

these claims through conciliation rather than litigation." *Patterson v. McLean Credit Union*, 491 U.S. 164, 180-181 (1989).

The EEOC will investigate the plaintiff's claim and issue a "right-to-sue letter" if it determines that the complaint has a reasonable basis. 29 C.F.R. § 1601.28(b). A plaintiff must possess a right-to-sue letter in order to file suit under Title VII. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000)(holding that the court's dismissal of the plaintiff's complaint due to the absence of a right-to-sue letter was unduly harsh because the plaintiff received the letter before the district court's final order).

While it is true that the "right-to-sue letter is a condition precedent," it is not a jurisdictional requirement. *Id.* at 310; *see also Rivers v. Barberton Board of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998). Thus, "the requirement of obtaining a right-to-sue letter may be waived by the parties or the court." *Id.* at 310. Courts have exercised their discretion to cure the non-jurisdictional impediment of filing without a right-to-sue letter. *See Portis v. State of Ohio*, 141 F.3d 632 (6th Cir. 1998).

Plaintiff did not obtain a right-to-sue letter before filing his first complaint. But he did file a charge of discrimination with the EEOC on January 23, 2007 and has received a right-to-sue letter since filing his "First Non-Superseeding (sic) Amended Complaint." Thus, the Court finds that Plaintiff's claim need not be dismissed on this basis.


**B.     Discrimination Claim**

Nonetheless, Plaintiff's claim fails. Defendants contend that Plaintiff cannot

prove racial discrimination because there were irrefutable legitimate business reasons for Plaintiff's termination; namely, Plaintiff lied on his employment application. The Court agrees.

A plaintiff may bring a Title VII claim under two distinct theories of discrimination: disparate treatment and disparate impact. *Hughley v. General Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir. 1995). Plaintiff bears the initial burden to establish a prima facie case of discrimination, the elements of which vary by plaintiff's choice of theory. *McDonnell Douglas Corp.*, 411 U.S. at 802. If a plaintiff establishes a prima facie case of discrimination, the defendant employer must articulate a legitimate, nondiscriminatory reason for the challenged employment action.

Disparate treatment requires proof of either direct or circumstantial evidence of discrimination. Without direct evidence, a plaintiff must provide sufficient evidence to create a presumption of intentional discrimination under *McDonnell Douglas*. To establish a prima facie case, Plaintiff must show: "(1) he belongs to a racial minority; (2) he was subject to an adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified for the job." *McDonnell Douglas Corp.*, 411 U.S. at 802.

On the other hand, disparate impact results from facially neutral employment practices that have disproportionately negative effects on certain protected groups, which cannot be justified by business necessity. *Hughley,* 52 F.3d at 1370. A plaintiff must establish a prima facie disparate impact claim by demonstrating "that a specific employment practice or policy caused significant disparate impact on a protected group." *Hartsel v. Keys*, 87 F.3d 795, 801-802 (6th Cir. 1996). Further, a plaintiff must

provide "statistical evidence of systematic discrimination (i.e., a pattern or practice which results in discrimination)." *Hughley,* 52 F.3d at 1370.

The Supreme Court stated that the plaintiff must first prove that the challenged policy discriminates against members of a protected class, and then the defendant can overcome the showing of disparate impact by proving a "manifest relationship" between the policy and job performance. *Griggs v. Duke Power Co.,* 401 U.S. 424 (1970). The second step is known as the "business necessity" defense. *Id.*

### A.     DISPARATE TREATMENT

It is undisputed that Plaintiff, an African-American, meets the first and second element of a prima facie case of racial discrimination. However, because there is no direct evidence of discrimination and Plaintiff offers no evidence showing Defendants treated a similarly situated employee outside of his classification more favorably, Plaintiff fails to establish a prima facie case.[2] To determine whether employees are similarly situated, the Court must consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.

Here, the Salvation Army states Plaintiff was terminated for falsifying his employment application. The Salvation Army maintains a practice of terminating employees who lie on their applications. Plaintiff argues that he answered all questions

---

[2]Note that the Salvation Army learned that Plaintiff made false statements in his application prior to terminating his employment. As such, this case does not involve "after acquired" evidence – that is where evidence of the employee's or applicant's misconduct or dishonesty which the employer did not know about at the time it acted adversely to the employee or applicant, but discovered at some point prior to or during subsequent legal proceeding. *McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352 (1995).

on the employment application truthfully.  He notes that the application did not request that he list "any and all convictions."  Rather, he argues that it merely asks whether he has ever been convicted which he truthfully answered.  Plaintiff says that in response to the application's request to include any misdemeanor convictions he attempted to set forth his misdemeanor conviction in the explanation section.

Plaintiff fails to overcome Defendant's legitimate reason for terminating him.  He fails to provide any evidence of non-African-American employees who did not provide complete information concerning their criminal backgrounds, who kept their jobs.  Thus, his claim under this theory fails as a matter of law.

### B.    DISPARATE IMPACT

Defendants suggest that the Court should not even address this allegation by Plaintiff, because it is a "red herring" used to divert focus from the "undisputable" fact that Plaintiff "lied" on his employment application.  However, Plaintiff does argue that the Salvation Army's policy of asking about criminal records disproportionately negatively affects African-Americans because "more blacks than whites are arrested in the geographical area where Defendant's company is located."

Plaintiff provides no evidence that African-Americans are disproportionately affected by the Salvation Army's policy, or that his termination was not the result of a legitimate non-discriminatory reason as Defendants suggest.  The Salvation Army states that Plaintiff was terminated for falsifying his employment application, and not because he had a criminal record.

In a sworn affidavit, Connie Elliott, human resources director, states that it is the Salvation Army standard practice to: (1) disqualify or terminate employees who provide

false or misleading information on their employment applications; (2) conduct criminal background checks on all employees that interact with the public; (3) not disqualify applicants or employees based solely on criminal convictions; and (4) have a background committee review all criminal background check results without regard to the applicant's race, age, or name. Connie Elliott also states that Plaintiff was terminated for lying on his application and not because of his criminal convictions. Plaintiff does not rebut her affidavit.

Courts hold that terminating an employee for misrepresenting or omitting information from an employment application is a legitimate non-discriminatory reason for termination under Title VII. *Elgabi v. Toledo Area Regional Transit Authority*, No. 06-3905, 2007 WL 1063160 (6th Cir. 2007); *Furby v. Potter*, No. 02-74544, 2003 WL 22283895 (E.D.Mich. Sept. 3, 2003); *Fullman v. Potter*, 480 F.Supp.2d 782, 792 (E.D.Pa. 2007).

The Salvation Army's practice to evaluate the employee and his criminal history demonstrates that the hiring policy attempts to ascertain the applicants ability to perform the job as well as the risk to the Salvation Army. Plaintiff's job required him to pick-up household goods from private residences. Given Plaintiff's prior convictions for burglary of private residences, the Salvation Army's pause in maintaining Plaintiff's employment would be understandable. Convictions of serious crimes – such as burglary– may present a substantial risk for employers like the Salvation Army.

Because the record conclusively reveals that the Salvation Army did not terminate or disqualify Plaintiff because of his criminal record and that the Salvation Army's decision was based on a nondiscriminatory reason – Plaintiff's false application

– the Court dismisses Plaintiff's claim pursuant to FED. R. CIV. P. 12(b)(6).

## C.      Claims Against Tim Hunt and James McSpadden

Plaintiff sued Tim Hunt and James McSpadden individually for discrimination under Title VII. Plaintiff argues their role in authorizing his termination is a cause of action under Title VII. The Sixth Circuit, however, held that "an individual employee/supervisor, who does not otherwise qualify as an "employer," may not be held personally liable under Title VII." *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). The Court notes that the legislative history and remedial scheme of Title VII demonstrates that Congress did not intend to impose individual liability on employees. *Id.* 405-406.

The Court dismisses Plaintiff's claims against Tim Hunt and James McSpadden in their individual capacities under Title VII.

## V.      CONCLUSION

The Court **GRANTS** Defendants' Motion to Dismiss. Plaintiff's motion is **DENIED**. Defendants' motion to stay discovery is **MOOT**.

**IT IS SO ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  June 27, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record and pro se plaintiff by electronic means or U.S. Mail on June 27, 2007.

s/Carol A. Pinegar
Deputy Clerk